IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RON PARSONS,<br><br>  Plaintiff,<br><br>vs.<br><br>NATIONAL INTERSTATE INSURANCE CO.; LATITUDE SUBROGATION SERVICES; ERIC BARNES, an individual; RACHEL SOBOSLAY, an individual; and DOES 1–10;<br><br>  Defendants. | MEMORANDUM DECISION & ORDER<br><br>Case No. 1:21-CV-00052-DAK<br><br>Judge Dale A. Kimball |

  This matter is before the court on two motions: Defendants' Eric Barnes (Barnes) and Rachel Soboslay's ("Soboslay") (collectively, "Individual Defendants") Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 11); and Plaintiff Ron Parsons' ("Parsons") Motion for Remand. (ECF No. 12.) The court does not feel that a hearing is necessary to resolve these motions and issues the following Memorandum Decision and Order.

## INTRODUCTION

  Both parties filed complaints in Utah state court and involve the same basic set of facts. On November 9, 2016, Plaintiff was involved in a motor vehicle accident in Texas involving two semi-trucks. (Compl. at ¶ 12, ECF No. 2-1.) Plaintiff sustained injuries during that accident and sought compensation from his employer. Following the accident, National Interstate, Plaintiff's employer's worker's compensation carrier, paid Plaintiff $443,803.18 in workers' compensation benefits. Plaintiff also sought Uninsured Motorist Coverage ("UIM/UM") benefits through

National Interstate. (Compl. at ¶¶ 70–77.) According to Plaintiff, National Interstate unfairly and incorrectly denied Plaintiff's request for UIM/UM benefits.

On February 23, 2020, Plaintiff filed his Complaint in Utah State court and asserted ten causes of action against National Interstate, the Individual Defendants, Latitude Subrogation Services ("Latitude"), and Does 1–10. Plaintiff's Complaint recounts the facts detailed in the previous paragraph and is premised entirely on National Interstate's alleged improper denial of UIM/UM benefits. This Complaint was not served on National Interstate until March 30, 2021. The state court docket does not show when or if the Individual Defendants or Latitude were served with the complaint.

Between the time that Plaintiff filed his Complaint and National Interstate accepted service of the same, National Interstate filed its own Complaint in Utah state court on March 9, 2021. National Interstate's Complaint details the same semi-truck accident and Plaintiff's workers' compensation payments but does not mention his UIM/UM benefits claim. The main thrust of National Interstate's Complaint revolves around Parsons' alleged $750,000 settlement obtained from the other semi-truck driver involved in the accident. Thus, National Interstate's Complaint seeks, in relevant part, to have a Utah State court enter an order: (1) "[f]or a declaration and judgment in favor of [National Interstate] and against Parsons in the amount of the settlement proceeds"; and (2) "[f]or an order specifically directing Parsons (or his attorneys) to remit to [National Interstate] the portion of the settlement funds from the alleged at-fault party, as required by [Utah law]." (National Interstate's Compl. at 4–5.) Thus, Parson's Complaint seeks different relief—payment of UIM/UM benefits—than National Interstate's Complaint—subrogation of Parson's settlement.

On April 9, 2021, after National Interstate accepted service of Parsons' state court complaint, it filed a notice of removal stating that it and the Individual Defendants consented to the removal. That same day, the Individual Defendants filed a Motion to Dismiss for lack of personal jurisdiction in Utah state court pursuant to Utah Rule of Civil Procedure 12(b)(2). According to the Notice of Removal, the Individual Defendants' state court Motion to Dismiss is "offered only in the alternative to their request for dismissal from this action for lack of personal jurisdiction" in federal court. (ECF No. 2 at 2.) A few weeks later, on April 30, 2021, the Individual Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction in this court pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (ECF No. 11.) Shortly after receiving the Notice of Removal, Plaintiff filed a Motion for Remand. (ECF No. 12).

## DISCUSSION

The court must first determine if removal was proper in this instance before it can decide the jurisdictional issue. Thus, this memo will (A) discuss Plaintiff's Motion for Remand before it can decide (B) whether the court may exercise jurisdiction over the Individual Defendants.

**A. Motion for Remand**

Plaintiff raises multiple arguments for why removal was improper here. Namely, that Defendants: (1) failed to allege complete diversity; (2) failed to show unanimity and proof of consent of all parties; and (3) waived their right to removal by litigating in state court. The court will discuss each argument in turn.

1. **Complete Diversity of Citizenship**

"[A] defendant seeking to remove a case to federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. §

3

1446(a)). Where removal is based on diversity of citizenship, the removal must set forth the citizenship of each party so the court can determine whether there is complete diversity. *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015).

Plaintiff complains that Defendants failed to meet the requirement of showing complete diversity in its notice of removal because the notice merely states that the Individual Defendants are "citizen[s] of the state of" Ohio and Indiana. According to Plaintiff, these "mere assertion[s] of citizenship" unaccompanied by "specific facts that would allow a Court to determine [their] accuracy" are "wholly insufficient for the purposes of removal." (ECF No. 12 at 7 (citation omitted).) Instead, Parsons suggests that Defendants "could have easily alleged, if true, that both Barnes and Soboslay respectively had a true, fixed, and permanent home and principal establishment and to which they intend to return whenever they are absent from it." (ECF No. 21 at 3 (footnote and internal formatting omitted).) The court is unconvinced by Plaintiff's arguments.

The court eschews Plaintiff's suggestion that such a rote phrase would have better satisfied the notice of removal requirements. Indeed, Plaintiff's argument, in essence, would simply require a removing defendant to define citizenship. After all, the language "true, fixed, and permanent home and principal establishment to which they intend to return" is simply how some courts define citizenship or domicile. Additionally, Plaintiff has offered no authoritative source that suggests that the removal statute requires a more detailed assertion of citizenship. Lastly, the cases Plaintiff cited[1] do not stand for the proposition that allegations of *citizenship* are

---

[1] Plaintiff's reliance on and quotation from *Stine v. Moore* is entirely unhelpful. 213 F.2d 446, 448 (5th Cir. 1954). First, the language quoted from *Stine* is the appellant's suggested definition of domicile, and the definition is not expressly adopted by the court. Second, this case is, again, discussing the issue of residence versus citizenship and, therefore, is unhelpful here.

insufficient, rather the cases indicate that allegations of *residency* are insufficient. *See, e.g., Nasco, Inc. v. Norsworthy*, 785 F. Supp. 707, 709 (M.D. Tenn. 1992); *J.C. Whitney & Co. v. Renaissance Software Corp.*, 98 F. Supp. 2d 981, 984 (N.D. Ill. 2000) (noting that the "plaintiff allege[d] that both defendants . . . [were] residents of Massachusetts . . . but plaintiff makes no allegation regarding the citizenship of [defendants]")).

Thus, the court rejects Plaintiff's argument[2] that the Notice of Removal was insufficient because Defendants failed to sufficiently allege complete diversity of citizenship.

### 2. Unanimity & Consent of Defendants

According to section 1441, "all defendants who have been properly joined *and served* must join in or consent to removal of the action." 28 U.S.C. § 1446(2)(A) (emphasis added). This rule is sometimes referred to as the rule of unanimity. *See Jarvis v. FHP of Utah, Inc.*, 874 F. Supp. 1253, 1254 (D. Utah 1995). Caselaw and the plain language of section 1441 indicate that parties not yet served do not need to join or consent to removal. *See* 28 U.S.C. § 1446(2)(A); *see also Cramer v. Devera Mgmt. Corp.*, No. 04-2102-JWL, 2004 WL 1179375, at *2 (D. Kan. May 27, 2004) ("It is well settled, though, that a defendant who has not been served need not join in or consent to removal." (collecting cases)).

Plaintiff initially complains that the rule of unanimity has not been satisfied because Latitude's lack of consent "is not evident" or "directly explain[ed]" "on the face of the removal papers." (ECF No. 12 at 8–9.) To support this argument, Plaintiff cites three pre-aughts, out-of-circuit district court opinions. Plaintiff's cites are inapposite to the situation here.

---

[2] In all candor, the court is irked by Plaintiff's argument. Plaintiff's argument hints at or suggests to the court that Defendants are misleading or withholding about the Individual Defendants' citizenship. If Plaintiff wishes to challenge the Individual Defendants' citizenship, he must have some basis for so doing and should actually make those allegations.

5

First, Plaintiff's cite to *P-Nut Carter's Fireworks, Inc. v. Carrey* is misplaced because, in that case, both defendants had been served. 685 F. Supp. 952, 953 (D.S.C. 1988). Despite both defendants being properly served, one defendant failed to obtain his co-defendant's consent or explain his absence. *Id.* More specifically, the defendant tried to argue the exception to the rule of unanimity by arguing the co-defendant was a "nominal party" and, therefore, did not need to consent to removal. *Id.* The court rejected this argument. *Id.* at n.3. Thus, because both defendants were served in *P-Nut Carter's Fireworks, Inc.*—which is not the case with Latitude here—the court finds this case is inapplicable.

Second, Plaintiff's cite to *Johnson v. Nutrex Research, Inc.* is unpersuasive because, again, all defendants had been properly served before one of the parties filed the notice of removal. 429 F. Supp. 2d 723, 727 (D. Md. 2006). After establishing that all defendants had been served, the *Johnson* court then notes that the notice of removal did not state why the co-defendant did not "join in or consent to the removal in a timely manner." *Id.* The court, therefore, premised its holding on the fact that the co-defendant "was in receipt of a copy of the complaint. . . but otherwise failed to join in or consent" to the removal. *Id.* at 728. Again, that is different from the situation here where Latitude has not been served and Defendants so stated in their Notice of Removal. Thus, the court finds Plaintiff's reliance on *Johnson* is unhelpful.

Lastly, Plaintiff's reliance on *Egle Nursing Home, Inc. v. Erie Insurance Group, et al.,* is similarly distinguishable. 981 F. Supp. 932, 933 (D. Md. 1997). In that case, Erie Insurance Group was "undisputedly a trade name used by the Erie Insurance Company and the Erie Insurance Exchange"—the co-defendants in that case. *Id.* at 933. When Erie Insurance Co. and Erie Insurance Exchange filed their notice of removal, they failed to explain that Erie Insurance Group was a nominal party and did not need to consent to the removal. *Id.* at 933–34. Thus, it

was the parties' failure to invoke and explain the nominal party exception in the notice of removal that rendered removal improper. *Id.* Again, that is entirely different from here because: (1) this situation does not include an assertion of the nominal party exception; and (2) Defendants' notice of removal states that Latitude has not been served, thereby indicating to the court that their consent is not necessary.

For the foregoing reasons, the court rejects Plaintiff's argument here. Defendants' adequately explained Latitude's absence and lack of consent.[3] Stating that Latitude had not been served is a sufficient explanation because that informs the court as to why their consent is missing and not necessary. To require more strikes the court as unnecessary hand-holding. Had Defendants failed to include the fact that Latitude had not yet been served in the Notice of Removal, the court may have come to a different conclusion. Thus, the court rejects Plaintiff's argument that Latitude's consent was not adequately explained and that the rule of unanimity was not satisfied.

### 3. Waiver by Litigation

Federal courts are of limited jurisdiction; thus, "[t]here is a presumption against removal jurisdiction, and the party seeking removal has the burden of proof to establish jurisdiction." *Anderson v. Lehman Bros. Bank, FSB*, 528 F. App'x 793, 795 (10th Cir. 2013) (citations omitted). This presumption, however, should "not be interpreted as a hostility toward removal

---

[3] Again, the court is irked by Plaintiff's argument. Plaintiff rhetorically asks: "The important question here is why did National Interstate not contact Latitude to ask for its consent? Or, in the alternative, if National Interstate did contact Latitude, why did Latitude not give its consent?" (ECF No. 21 at 5.) This is not an important or relevant question. As detailed above, the law does not ask this question nor require this sort of action from National Interstate. Further, Plaintiff's argument again seemingly suggests or implies—without evidence—that Defendants have been misleading or withholding to the court in its notice of removal. The court takes such suggestions seriously. Thus, if Plaintiff wishes to argue that Defendants have attempted to mislead the court it should expressly make that allegation rather than dabbling in hypotheticals.

cases in the federal courts." *New Mexico ex rel. Balderas v. Valley Meat Co., LLC*, No. 14-1100 JB/KBM, 2015 WL 3544288, at *7 (D.N.M. May 20, 2015) (citations omitted).

The facts of this case find their way into a narrow gap in the case law regarding waiver of the right to remove by a defendant's state-court participation. The first applicable case is *Akin v. Ashland Chemical Co.* in which the court discusses when the right to removal accrues. 156 F.3d 1030 (10th Cir. 1998). In *Akin*, the court was tasked with determining whether the removal was timely and whether one of the defendants could not properly consent to removal because it had participated in the state court proceeding. *Id.* at 1035–36. In addressing the timeliness of removal, the Tenth Circuit noted that the right to remove does not begin to run until "the defendant is able to intelligently ascertain removability." *Id.* at 1036 (citation omitted). This articulation of the right to removal was then applied to a defendant "who had previously filed a motion for summary judgment in state court." *Id*. In holding that the defendant did not waive its right to consent to the removal, the court reasoned "that a defendant who actively invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from the right to removal in the absence of adequate notice of the right to remove." *Id.* Thus, the *Akin* court seemingly suggests that a defendant cannot waive its right to remove before that right has accrued—or, to use the Tenth Circuit's language, before there is "clear and unequivocal notice" of that right. *Id.*

The *Akin* court's conclusion is, to some extent, still good law despite the Tenth Circuit's subsequent discussion of waiver by participation in *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1098 (10th Cir. 2017). In *Soto Enterprises*, the Tenth Circuit acknowledged that waiver by participation is guided by the common law's waiver principles. *Id.* at 1097 ("We conclude that, because waiver is a common law creation not included in the removal statutes, it

8

does not qualify as 'any defect' under § 1447(c)."). This common law doctrine generally holds that:

> a defendant waives removal by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court. This waiver must be clear and unequivocal, meaning that short of the defendant seeking an adjudication on the merits, the right to removal is not lost.

*Id.* at 1098 (internal formatting, quotation marks, and citations omitted). After recognizing waiver by participation's common law roots and principles, the Tenth Circuit addressed whether the defendant had "waived its removal right by filing a motion to dismiss in state court." *Id.* at 1098.

In its de novo review of the district court's finding that the defendant had waived its removal right, the Tenth Circuit crafted a bright-line waiver by participation rule:

> We hold that when a defendant files a motion to dismiss seeking disposition, in whole or in part, on the merits in state court before removing the case to federal court, it manifests a "clear and unequivocal" intent to submit the case to the state court's jurisdiction, and thus waives removal. We favor a bright-line rule to avoid piecemeal litigation that would distinguish cases based on the length of delay between motions to dismiss and motions to remove and based on any number of like considerations. Yet we also recognize that in limited circumstances, this bright-line rule can lead to unfair results, so we fashion an exception as well.
> We will not find waiver of the right to remove when a state's procedural rules compel a defendant's state-court participation. For this exception to apply, we look for potential harm to defendants.

*Soto Enterprises, Inc.*, 864 F.3d at 1099 (footnotes omitted).

The *Soto Enterprises'* bright-line rule does not contemplate a situation like discussed in *Akin*, where a party's ability or right to remove arises after it has participated in state court. The court doubts that *Soto Enterprises'* bright-line rule would be applied to a defendant who participated in state-court proceedings before removal was available. Thus, as noted, the situation here falls outside of the caselaw because this situation involves two underlying state-

9

court cases where National Interstate manifested an intent to litigate in state court but *before* its right to remove had accrued. Thus, without clear guidance from case law, the court looks to common law waiver doctrines and the statutory right to removal in order to decide the issue at hand.

Under the common law, there are two types of waivers: express or implied. Express waiver is commonly stated as "[t]he voluntary relinquishment or abandonment . . . of a legal right or advantage." *Waiver*, Black's Law Dictionary (11th ed. 2019). Under express waiver, "[t]he party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." *Id.* Implied waiver, however, "is evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Id.* This may occur "where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it." *Id.* (citing 28 Am. Jur. 2d *Estoppel and Waiver* § 160, at 845–46 (1966)). Under these common law waiver principles, it appears that a party cannot waive a right of which it is unaware.

This principle appears in the caselaw involving waiver of the right to remove. Specifically, the law is clear that a party cannot waive its right to remove by its state court conduct prior to its knowledge of the removability of a case. *See Akin,* 156 F.3d at 1036; *Kenny v. Wal–Mart Stores, Inc.*, 881 F.3d 786, 790 (9th Cir. 2018) (holding that a defendant "may waive the right to remove to federal court where, *after it is apparent that the case is removable*, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." (internal quotation marks and citation omitted) (emphasis added)); *Taylor v. United Rd. Servs., Inc.*, 313 F. Supp. 3d 1161, 1174 (E.D. Cal. 2018) (holding that a defendant's "litigating in state court until it was on notice

10

of the cases' removability did not waive [its] right to remove"). This principle likely remains intact after the bright-line waiver rule from *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089 (10th Cir. 2017). Thus, at first glance, it appears that National Interstate cannot be said to have waived its right to removal by filing its state-court complaint prior to its knowledge of Parsons' state-court action. The court, however, reasons that an understanding of what is meant by "the right to remove" nevertheless compels the conclusion that National Interstate waived its right to remove.

      The right to remove—based on diversity jurisdiction—involves the interplay of 28 U.S.C. §§ 1332 and 1441. The purpose of 28 U.S.C. § 1332 is "to provide a neutral forum" for "civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens" where the amount in controversy requirement is met. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Thus, under section 1332, Congress gave *plaintiffs* the statutory right to select a neutral forum for litigation between citizens of different states. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89, 126 S. Ct. 606, 613, 163 L. Ed. 2d 415 (2005) ("While § 1332 allows plaintiffs to invoke the federal court's diversity jurisdiction, § 1441 gives defendants a corresponding opportunity."). The removal statute, 28 U.S.C. § 1441, serves the same goal—to provide a neutral forum for diverse citizens—but in the inverse. That is to say, section 1441 provided a path whereby Congress gave *defendants* the right to invoke federal jurisdiction so that a plaintiff could not unilaterally determine the forum. *Id.* Thus, when courts reference a defendant's right to remove based on diversity jurisdiction, that is essentially a court's shorthand for a defendant's right to invoke the federal court's jurisdiction under section 1332. In fact, the Ninth Circuit has, on occasion, referred to the waiver of the right to remove as abandoning the "right to a federal forum." *Kenny*, 881. F.3d at 790 (citation

omitted). Accordingly, as the court continues with its analysis, it will refer to the right at issue as the right to invoke this court's diversity jurisdiction.

When the court frames the issue as the right to invoke diversity jurisdiction instead of the right to remove, the conclusion is inescapable that National Interstate waived that right. National Interstate's Complaint could have been filed in federal court according to the factual statements in its Notice of Removal. *See Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748, *reh'g denied*, 140 S. Ct. 17, (2019) (noting that "when determining whether it has original jurisdiction over a civil action, [courts] should evaluate whether that action could have been brought originally in federal court" (citation omitted)). Thus, National Interstate voluntarily chose to forgo its right to invoke diversity jurisdiction and instead file in Utah state court. Filing a complaint in state court is a clear indication of National Interstates' intent and willingness to litigate in state court and not exercise its right to invoke diversity jurisdiction under 28 U.S.C. § 1332. Importantly, nothing compelled National Interstate to file its complaint in state court and—as evidenced by its Notice of Removal—National Interstate had clear knowledge of its right to diversity jurisdiction. In short, by choosing not to file in federal court under § 1332, National Interstate waived its right to invoke diversity jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441.[4]

---

[4] The court was unable to find any caselaw that expressly states a party may waive its right to invoke diversity jurisdiction. Nevertheless, the court finds there are sufficient cases to justify such a conclusion. Indeed, many courts have found that a party may waive its right to assert specific removal or remand arguments. For example, in *Akin v. Ashland Chemical Co.* the Tenth Circuit found that the Plaintiff waived its right to argue that the notice of removal was improper by filing an amended complaint and adding parties. 156 F.3d at 1036; *see also Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1248 (10th Cir. 2004) (upholding the district court's denial of plaintiff's motion for remand because the plaintiff "affirmatively utilized the federal forum for her own purposes after the district court denied her motion to remand.") Similarly, removing defendants are not typically allowed to "add new bases for removal . . . for the first time in opposition to a motion for remand." *Rader v. Sun Life Assur. Co. of Canada*, 941

This conclusion that National Interstate waived its right to invoke diversity jurisdiction also fits with *Soto Enterprises'* statement of the common law meaning of waiver by litigation. *Soto Enterprises, Inc.*, 864 F.3d at 1098. Namely, that waiver occurs by "taking some substantial offensive . . . action in the state court" which indicates "a willingness to litigate in that tribunal." *Id.* That is precisely what occurred here. National interstate took substantial offensive conduct indicating a willingness to litigate its claims on the merits in Utah despite possessing the ability to file in federal court and thereby waived its right to assert diversity jurisdiction.

The court has one final consideration. Since the facts of this situation involve new legal questions regarding a party's waiver of its right to remove or invoke diversity jurisdiction, the court alternatively finds that the removal standards compel remand because "[a]ll doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.,* 683 F.2d 331, 333 (10th Cir.1982).

For the foregoing reasons, the court concludes that National Interstate waived its right to invoke diversity jurisdiction and, therefore, could not remove Parsons' state court action. In the alternative, since there are doubts about the court's jurisdiction in this instance, remand is required. *Id.*

B.  **Motion To Dismiss for Lack of Personal Jurisdiction**

The court declines to address the Motion to Dismiss because it has concluded that this case was improperly removed. Since the removal was improper the court must remand the case to state court and cannot exercise jurisdiction over the Motion to Dismiss.

---

F.Supp.2d 1191, 1196 (N.D.Cal.2013) (citing *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000)). Thus, the court finds that a party may waive specific arguments upon which removal may be based, and that occurred here.

## CONCLUSION

For the foregoing reasons the court GRANTS Plaintiff's Motion for Remand. (ECF No. 12.) This case is remanded to the Second Judicial District Court in and for Weber County, State of Utah. Since the case was improperly removed, the court cannot exercise jurisdiction over the Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 11) and, therefore, that motion is DENIED.

DATED this 17th day of June, 2021.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge